Alan J. Leiman (OSB No. 980746)
LEIMAN & JOHNSON, LLC
44 W. Broadway, Suite 326
Eugene, OR 97401
alan@leimanlaw.com

Drew G. Johnson (OSB No. 114289)
LEIMAN & JOHNSON, LLC
44 W. Broadway, Suite 326
Eugene, OR 97401
drew@leimanlaw.com

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **TRAVIS GREENWOOD**, <br><br> Plaintiff, <br><br> v. <br><br> **GREEN LEAF LAB LLC**, <br> an Oregon limited liability company <br><br> Defendant. | CASE NO.: 3:17-cv-00415 <br><br> **FLSA MINIMUM WAGE AND OVERTIME COMPLAINT; FLSA RETALIATION; OREGON WAGE AND HOUR LAWS**; <br> Fair Labor Standards Act 29 U.S.C. § 201 *et. seq.*; Oregon Wage and Hour Laws (ORS 652) <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, TRAVIS GREENWOOD ("Greenwood"), brings this Fair Labor Standards Act ("FLSA") action for violations of the FLSA and Oregon's Wage and Hour laws against Defendant, GREEN LEAF LAB LLC, an enterprise engaged in commerce or the production or goods for commerce (hereinafter, "Green Leaf"). Plaintiff makes his allegations based upon personal knowledge, information, and belief.

1 – Complaint

## INTRODUCTION

1. Plaintiff Travis Greenwood worked many long hours as a courier transporting medical and recreational marijuana testing samples between Ashland, Oregon and Portland, Oregon for Defendant without proper compensation.

2. At times material during his employment with Defendant as specified herein, Plaintiff was wrongfully classified and treated as an independent contractor by the Defendant when in fact, under the FLSA and Oregon Wage and Hour Laws (ORS Chapter 652), he should have been properly classified and treated as an employee.

3. At times material during his employment with Defendant as specified herein, Plaintiff was properly classified as a W-2 employee and paid hourly wages.

4. Defendant suffered and permitted Plaintiff to work as its employee.

5. Defendant controlled all aspects of the work Plaintiff performed for Defendant.

6. As a condition of his employment, Plaintiff was required to pay unlawful kickbacks to Defendant in the form of unreimbursed business expenses. The unreimbursed business expenses that Plaintiff paid for Defendant's benefit substantially reduced Plaintiff's net income.

7. Plaintiff bring this action to recover his individual unpaid minimum wage and overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. and Oregon Wage and Hour Laws, ORS Chapter 652 ("Oregon Wage and Hour Laws").

8. Plaintiff also bring this action under 29 U.S.C. § 215(a)(3) of the FLSA to recover his damages arising out of Defendant's prohibited retaliation that occurred when Defendant fired Plaintiff in response to Plaintiff asking about his compensation and whether he had been paid all wages earned.

9. Plaintiff also brings this action to recover wages and penalties for violation of Oregon Wage and Hour Laws (ORS Chapter 652).

10. Plaintiff also brings this action to recover damages relating to the non-wage treatment of the compensation paid to Plaintiff, including Plaintiff being subject to higher rates of federal and state taxation, and the failure of Defendant to make Social Security contributions for the benefit of Plaintiff.

11. This action seeks equitable relief, compensatory and liquidated damages, punitive damages, attorney's fees, taxable costs of court, pre- and post-judgment interest and penalty wages for Defendant's willful failure to pay wages, including minimum wages and overtime wages, and other relief, pursuant to 29 U.S.C. § 216(b) and Oregon Wage and Hour Laws for Plaintiff.

12. Plaintiff demands a jury trial on all issues that may be tried to a jury.

13. This action is authorized and instituted pursuant to the FLSA, 29 U.S.C. § 201 *et seq*.

## JURISDICTION AND VENUE

14. Jurisdiction is conferred on this Court by 29 U.S.C. § 216(b), as this action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.; 28 U.S.C. § 1331; and 28 U.S.C. §1337, as it arises under acts of Congress regulating commerce. Jurisdiction of the state law claims is conferred on this Court by 28 U.S.C. § 1367 because the state law claims form a part of the same case or controversy as the federal claims under Article III of the United States Constitution.

15. Venue is proper in this District Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this complaint occurred in the District of Oregon.

## PARTIES

16. Defendant Green Leaf Lab LLC is an Oregon corporation whose website states that it is the Northwest's premier laboratory for providing cannabis testing, that it is Oregon's first accredited and licensed cannabis laboratory, and that it employs professionally educated chemists for all cannabis testing and screening procedures. Defendant Green Leaf Lab LLC is an OLCC licensed marijuana and cannabis products testing laboratory located in Portland, Oregon.

17. Defendant Green Leaf Lab LLC is a member-managed LLC managed by Rowshan Reordan.

18. Defendant is subject to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and Oregon Wage and Hour Laws, ORS Chapters 652 and 653.

19. At all material times, Defendant Green Leaf Lab LLC has been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1) because it had employees engaged in commerce. Based upon information and belief, the annual gross sales volume of Green Leaf was in excess of $500,000.00 per annum at all times material hereto. Alternatively, the Plaintiff worked in interstate commerce so as to fall within the protections of the FLSA.

20. At all material times, Defendant Green Leaf Lab LLC has been an employer within the meaning of 3(d) of the FLSA, 29 U.S.C. § 203(d). Defendant directly or indirectly acted in the interest of an employer toward the Plaintiff at all material times, including, without limitation, directly or indirectly controlling all employment terms and working conditions of Plaintiff.

21. At all material times, Defendant operated a cannabis-testing laboratory in Portland, Oregon and maintained various drop sites throughout Western and Southern Oregon to collect

and expedite the delivery of marijuana testing samples to Defendant's laboratory by Plaintiff and other Green Leaf couriers.

22. Plaintiff currently resides in Multnomah County, Oregon.

23. Plaintiff worked for Green Leaf from on or about April 7, 2015 until his termination on or about November 28, 2016.

24. During his employment with Defendant, Plaintiff's sole source of income was through his employment with Defendant.

25. During and prior to his employment with Defendant, Plaintiff did not work as an independent courier and did not work as a courier for any person or entity other than Defendant.

26. At all times while working for Defendant, Plaintiff was not compensated in a manner that comports with the minimum wage and overtime provisions of either the FLSA or Oregon Wage and Hour laws.

27. At times material to this complaint while working for Defendant, Plaintiff drove his personal vehicle, which weighed less than 10,001 pounds, GVWR, to deliver packages for Defendant.

**FACTS**

28. On or about April 7, 2015, Green Leaf Lab LLC hired Plaintiff to work as a courier to drive between Ashland, Oregon and Portland, Oregon to pick up and deliver marijuana samples for testing at Green Leaf's Portland, Oregon location.

29. At the time of his hire, Plaintiff was living in Ashland, Oregon. Sometime during on or around June 2015, Plaintiff moved from Ashland, Oregon to Portland, Oregon. Plaintiff continued working as a courier for Defendant.

30. As a condition of his employment, Plaintiff was required by Defendant to use his personal vehicle to drive between Portland and Defendant's designated sample drop sites to collect and deliver samples of marijuana for testing to Defendant's lab in Portland.

31. At times material, as a condition of his employment, Plaintiff was required by Defendant to pay all fuel, automobile insurance, and maintenance expenses related to the operation of his personal vehicle for the benefit of Defendant.

32. At all material times except for a ten-month period specified herein, as a condition of his employment, Plaintiff was required by Defendant to pay for and use his personal cell phone and cellular data to conduct Defendant's business. From on or about September 28, 2015 and continuing until on or about July 25, 2016, Defendant provided Plaintiff with a cell phone paid for by Defendant.

33. During his employment, Plaintiff provided a direct economic benefit, or kickback, to Defendant as a condition of his employment by: 1) using his personal cell phone, while also paying for and using his personal cellular data services; and, 2) using his personal vehicle, while also paying all vehicle operating expenses, for the direct benefit of the Defendant.

34. At all material times herein specified, Defendant enjoyed cost-saving kickbacks from Plaintiff in the form of vehicle operation and maintenance expenses and cell phone services that were paid by Plaintiff for the direct benefit of Defendant.

35. As a result of being required to pay kickbacks to Defendant, Plaintiff's compensation was significantly less than the Oregon minimum wage.

36. At all times material herein specified, as a result of paying kickbacks to Defendant, the amount of income that Plaintiff received Defendant was less than the unreimbursed expenses that Plaintiff incurred on Defendant's behalf.

37. During 2015 the Internal Revenue Service ("IRS") Standard Mileage Reimbursement Rates for business use of personal vehicles was $0.575 per mile. During 2016, that rate was $0.54 per mile.

38. Using standard personal vehicle mileage reimbursement rates to compute the economic benefit that Plaintiff provided to Defendant, and based on unreimbursed mileage alone, Plaintiff received less compensation from Defendant than he paid in vehicle expenses while working as a courier for Defendant.

39. For example, using the 2015 IRS mileage reimbursement rate of $0.575 per mile, Plaintiff incurred unreimbursed vehicle expenses of $339.50 each day that he worked as a courier for Defendant and drove 590 miles in his personal vehicle, and $299.00 in unreimbursed expenses when he drove 520 miles.

40. At times material to this Complaint, Defendant paid Plaintiff $150.00 per day, plus an essentially worthless coupon, and later $250.00 per day for his work as a marijuana testing sample courier.

41. For a period of nearly six months, between April and October of 2015 Plaintiff was paid $150.00 plus a coupon or "gift certificate" good for $100.00 worth of marijuana testing at Green Leaf Labs. The net result is that Plaintiff effectively "paid" or "kicked back" to Defendant between $174.50 and $44.00 worth of direct economic benefit in the form of unreimbursed personal vehicle expenses each day that Plaintiff worked as a courier delivering marijuana testing samples for Defendant during this period.

42. In late December 2015, Defendant informed Plaintiff that he needed to have "business level" insurance on his personal automobile insurance policy. Defendant later offered to reimburse Plaintiff for half of the cost of Plaintiff's higher premiums.

43. Beginning on or around January 2016, and as a condition of his employment, Plaintiff was required to carry commercial automobile insurance on his personal vehicle. As a result of being required to insure Defendant's business and contribute to the payment of Defendant's business expenses, Plaintiff's automobile insurance premiums increased from $82.19 per month to $195.12 per month.

44. Plaintiff subsequently submitted his insurance bills to Defendant for the insurance premium reimbursement that was promised by Defendant, but Defendant never reimbursed Plaintiff.

45. In July 2016, Plaintiff asked Defendant's member-manager, Rowshan Reordan about the status of his insurance premium reimbursement to which she replied, it would be included in Plaintiff's "Christmas Bonus." Plaintiff never received a Christmas Bonus, nor did he ever receive any reimbursement for his increased automobile insurance as promised by Defendant.

46. At times material throughout the course of his employment until on or about October 1, 2016, shortly before his termination, Defendant treated Plaintiff as an independent contractor even though Defendant controlled nearly every aspect of his work including prohibiting him from acting as a courier for any other person or entity while transporting marijuana samples for Defendant and its customers.

47. At times material, Defendant treated and compensated Plaintiff as a W-2 employee when he was working as a customer service representative staffing an office in Roseburg, Oregon to receive marijuana testing samples to be couriered by Plaintiff or others to Defendant's lab in Portland, Oregon. Defendant also treated plaintiff as a W-2 employee during the last two months of his employment.

48. At all times material, Defendant controlled nearly every aspect of Plaintiff's work including setting his work schedule and specifying the precise times and locations of sample collection and delivery.

49. On September 29, 2016, Defendant's member-manager, Rowshan Reordan, asked Plaintiff to provide her with a business card from 2015 showing that Plaintiff owned a courier service even though she knew or should have known that Plaintiff had ever owned or operated a courier service, or that Plaintiff had even been engaged by any other person or entity to work as a courier.

50. At all times material, Defendant knew or should have known that Plaintiff had never worked as a courier for anyone other than Defendant.

51. Defendant's misclassification of Plaintiff as an independent contractor and its failure to pay Plaintiff the proper minimum wages and overtime compensation earned and owed to Plaintiff was willful.

52. Plaintiff was not paid for time that he spent on the phone coordinating the pick-up and delivery of marijuana testing samples for the sole benefit of Defendant.

53. At times material, Defendant required Plaintiff to attend Defendant's mandatory employee training sessions without any compensation whatsoever. For example, Plaintiff attended a mandatory employee training session on September 29, 2016 approximately 9:00am to approximately 1:00pm and received no compensation for his time attending the mandatory training session on that day. Plaintiff is owed compensation at his established hourly rate of pay (to be determined), or approximately $20.83 per hour for at least six hours of uncompensated time worked on September 29, 2016. The training on September 29, 2016, was not the only

instance of Defendant's mandatory training that Plaintiff attended without compensation from Defendant.

54. While working as a courier driver for Defendant, Plaintiff worked between 12 and 15 hours per day that he drove between Portland, Oregon and Grants Pass, Oregon.

**April 7, 2015 to September 25, 2015**

55. Between April 7, 2015 and September 25, 2015, Defendant employed Plaintiff to courier documents, office supplies, and marijuana samples between Ashland, Oregon and Defendant's laboratory in Portland, Oregon.

56. Between April 7, 2015 and June 2015, Plaintiff drove approximately 590 miles each day that he worked as a courier for Defendant.

57. Between June 2015 and September 25, 2015, after relocating from Ashland, Oregon to Portland, Oregon, Plaintiff logged an average of 520 miles per day that he worked as a courier for Defendant.

58. Between April 7, 2015 and September 25, 2015, Plaintiff typically made the trip between Ashland and Portland two times per week.

59. Between April 7, 2015 and September 25, 2015, Plaintiff worked a minimum of 12 hours and occasionally worked as many as 15 hours each day that he made the trip between Ashland, Oregon and Portland, Oregon for Defendant.

60. Between April 7, 2015 and September 25, 2015, for each roundtrip that Plaintiff made between Defendant's designated drop or pick-up sites and its lab in Portland, Defendant paid Plaintiff $150.00 plus a Green Leaf Labs gift certificate redeemable for $100.00 worth of marijuana testing at Defendant's lab.

61. At all times material, Plaintiff did not own, operate, or work for any business, other than Defendant, involved in the growing, manufacturing, testing, or dispensing of medical or recreational marijuana and related products. Defendant knew this and it knew that Plaintiff had no use for marijuana product testing services or marijuana testing gift certificates. Defendant knew that the $100 gift certificates it proffered as compensation to Plaintiff had absolutely no value to Plaintiff.

**September 28, 2015 to July 25, 2016**

62. Between September 28, 2015 and July 25, 2016, Plaintiff was living in Beaverton, Oregon and driving as a courier for Defendant on Monday, Wednesday, and Friday every week and averaging 520 miles per day, and working between 12 and 15 hours per day, while working as a courier for Defendant.

63. During this time, Defendant paid Plaintiff $250.00 per day regardless of the mileage driven or hours worked by Plaintiff.

64. Between September 28, 2015 and July 25, 2016, in addition to continuing to work as a courier, Plaintiff was employed by Defendant to work one day per week as Defendant's "Roseburg Accounts Manager". After about one month, by on or around the beginning of November 2015, Defendant had increased Plaintiffs account manager duties to three days per week. Plaintiff continued working three days per week as courier.

65. As the Roseburg Accounts Manager, Plaintiff was compensated as W-2 employee and was purportedly paid $14.00 per hour plus a 5% commission. Nevertheless, Defendant continued treating Plaintiff as an independent contractor, paying him $250.00 per day for his work as a courier, while not reimbursing him for the use of his personal vehicle which he used to courier marijuana testing samples for Defendant.

**July 26, 2016 to November 28, 2016**

66.     Beginning on or around July 26, 2016, Plaintiff was no longer working as the Roseburg Accounts Manager and was no longer being compensated as a W-2 employee for Defendant.

67.     On or about September 29, 2016, Defendant's member-manager Rowshan Reordan and Plaintiff discussed Plaintiff's compensation and status as an independent contractor. During this conversation, Defendant notified Plaintiff that he there were "problems" with his compensation and admitted to Plaintiff that "there were tax issues" with the manner in which he had been compensated by Defendant. During or around the time of this conversation, Rowshan Reordan also asked Plaintiff to provide Defendant with a business card for Plaintiff's non-existent courier business. Plaintiff informed Defendant that he had never owned or operated a courier business.

68.     On or about October 1, 2016, Defendant made Plaintiff a W-2 employee and set his rate of pay at $1500.00 per pay period for six days work as a courier. Plaintiff was still being paid $250.00 per day as a courier and was still not being reimbursed by the Defendant for the use of Plaintiff's personal vehicle or cell phone.

69.     After becoming a W-2 employee in October 2016, Plaintiff worked an average of 10 to 15 hours of unpaid overtime per week until his termination on November 28, 2016. During some weeks in that period of time, Plaintiff worked 20 or more hours of unpaid overtime.

70.     For example and to illustrate Plaintiff's damages, during the week of October 3-9, 2016, Plaintiff worked as a courier for the entire week. During that week, Plaintiff worked 5 days, Monday through Friday, driving his personal vehicle approximately 513 miles each day and working a minimum of 12 hours each day. During that week, Defendant paid Plaintiff $250 per day that he worked as a courier, but Defendant did not reimburse Plaintiff for using his personal vehicle. At the Standard IRS Vehicle Reimbursement rate in effect at the time ($0.54 per mile),

Plaintiff's vehicle expenses are calculated to be $277.02 per day, or $1385.10 for the week. Defendant paid Plaintiff $1,250.00 for the week as compensation for his time. Taking into account the Plaintiff's $1385.10 kickback to the Defendant, Plaintiff was not paid the Oregon minimum wage or overtime for the week of October 3-9, 2016. In fact, after accounting for the use of his personal vehicle, using IRS personal vehicle reimbursement rates, Plaintiff suffered a net loss of $135.10 for the week of October 3-9, 2016.

71. On or around October 20, 2016, Plaintiff's personal vehicle fell into disrepair and was inoperable. As a result, Defendant encouraged Plaintiff to rent a vehicle in order to continue his courier duties for Defendant with the assurance that the Defendant would fully reimburse him for the cost of renting a car. Plaintiff rented a vehicle on October 20, 2016 and returned it on November 5, 2016. The rental car reserved by Defendant was too small to carry the number of containers being transported to Defendant's lab, therefore, Plaintiff rented a larger vehicle at a slightly higher price to accommodate the coolers used to hold the testing samples. Defendant did not reimburse Plaintiff for the difference in price between the undersized economy car and the properly sized car that was rented by Plaintiff. His total charges for the rental car were $1004.01. Defendant reimbursed Plaintiff $798.09 for the rental car which Plaintiff rented for the purpose of driving Defendant's marijuana testing samples from its drop sites (or collection points) in Southern Oregon to Defendant's testing lab in Portland, Oregon.

72. On November 5, 2016, Defendant sent an email to Plaintiff notifying him that it was getting a new company vehicle and that Plaintiff would be "reimbursed at $16.00 an hour" and that "[o]vertime is calculated on a weekly basis and is paid at time and a half for over 40 hours of work." However, Defendant never paid Plaintiff more than $14.00 per hour. When Plaintiff inquired about only paid $14.00 per hour, he was told that Defendant's manager Rowshan

Reordan did not realize how many hours it took to complete Plaintiff's assigned courier tasks, so Defendant was only going to pay to $14.00 per hour. Plaintiff was terminated less than two weeks after he inquired with Defendant about his the discrepancy between the rate of pay he was promised and the amount he was being paid.

73. Beginning on or about November 7, 2016, Defendant acquired a company vehicle for Plaintiff to drive while working as courier for Defendant.

74. On or about November 18, 2016, Plaintiff sent an email to Defendant's member-manager Rowshan Reordan asking to discuss his compensation and pointing out that he was still owed compensation for unpaid overtime pay.

75. On or about November 28, 2016, Defendant terminated Plaintiff's employment claiming it was "going in another direction" without offering another reason for Plaintiff's termination. Defendant terminated Plaintiff's employment shortly after Plaintiff inquired about his unpaid overtime and the legality of the compensation that had been paid to him by Defendant.

76. Records of all hours worked by Plaintiff are in possession and control of Defendant.

77. At all times material, Defendant willfully failed to compute Plaintiff's correct regular rate of pay for purposes of determining the amount of overtime compensation due to Plaintiff.

### FIRST CLAIM FOR RELIEF
(FLSA Minimum Wage and Overtime Violations - 29 U.S.C § 207)

78. Plaintiffs re-allege and incorporate herein by reference, all allegations contained in paragraphs 1 through 77 above.

79. At all material times, Plaintiff performed duties for the benefit of, and on behalf of the Defendant, under employment terms and conditions set by Defendant.

80. At all material times, Defendant was required to pay Plaintiff in accordance with the minimum wage and overtime provisions of the FLSA.

81. At all material times, Defendant did not keep the required records of hours worked by Plaintiff.

82. At all material times, Defendant did not compute a regular rate of pay for Plaintiff by adding together his earnings for a workweek and dividing that sum by the total hours worked as required by 29 C.F.R. §778.111.

83. At all material times, Defendant did not account for the fuel and vehicle related expenses incurred by Plaintiff when computing his rates of pay.

84. Defendant's failure to compute a regular rate of pay for Plaintiff resulted in workweeks in which Plaintiff did not receive the required minimum wages and overtime pay.

85. Defendant has not paid Plaintiff the FLSA required Oregon minimum wage for all hours worked.

86. Defendant has not paid Plaintiff the correct amount of overtime pay at a rate equal to one and one-half of his regular rate of pay for workweeks in which he worked in excess of 40 hours in violation of 29 U.S.C. § 207.

87. At all material times hereto, Defendant failed to comply with Title 29 U.S.C. §§ 201-209 in that the Plaintiff performed services and labor for Defendant for which Defendant failed to track hours worked, failed to compute a regular rate of pay, and failed to pay Plaintiff the correct amount of minimum wages and overtime. Plaintiff is entitled to liquidated damages for Defendant's willful failure to pay the correct amount of minimum wage and overtime.

88. Plaintiff bring this action individually, seeking unpaid minimum wages, overtime compensation, liquidated damages, pre-judgment interest, costs, penalty wages, and attorneys' fees arising from the law violations set forth herein.

89. Defendant's failure to pay Plaintiff all minimum wages and overtime earned resulted from the Defendant's willful act of knowingly employing Plaintiff as independent contractor when in fact Plaintiff was an employees subject to the minimum wage and overtime protections of the FLSA.

90. By reason of said intentional, willful, and unlawful acts of Defendant, Plaintiff has suffered damages and have also incurred costs and reasonable attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**(FLSA Retaliation)**

91. Plaintiff re-alleges and incorporates herein by reference, all allegations contained in paragraphs 1 through 77 above.

92. On September 29, 2016 Defendant told Plaintiff that there were "some issues" with the manner in which he was being compensated. At that time, Plaintiff was unaware of his rights related to minimum wage and overtime compensation under state and federal law. After that meeting, Defendant made some changes to the manner in which it was compensating Plaintiff but those changes still failed to comport with state and federal minimum wage and overtime requirements.

93. On November 18, 2016, Plaintiff emailed Defendant to express concerns that his pay did not accurately reflect the number of hours worked indicating he was owed for unpaid overtime.

94. Plaintiff "filed a complaint" within the meaning of 29 U.S.C. § 215(a)(3) when he and Defendant discussed the fact that Defendant was not paying him correctly on or about September 29, 2016.

95. Plaintiff again "filed a complaint" within the meaning of 29 U.S.C. § 215(a)(3) when he sent an email to Defendant on or about November 18, 2016 and notified Defendant that he had not been paid for all overtime hours worked and asked Defendant to continue discussing his compensation and the fact that he was not being paid at $16.00 per hour as promised.

96. Defendant violated 29 U.S.C. § 215(a)(3) by discharging Plaintiff on or about November 28, 2016 because he complained to Defendant that he was not being paid in accordance with the FLSA and Oregon wage and hour laws, and because he asked to be paid in accordance with the FLSA and Oregon wage and hour laws.

97. The pay that was the subject of Plaintiff's November 18, 2016 complaint was FLSA minimum wage and overtime pay.

98. Plaintiff is entitled to reinstatement or front pay, and backpay for Defendant's wrongful termination of him in violation of 29 U.S.C. § 215 as alleged above, pursuant to 29 U.S.C. § 216(b).

99. Moreover, as a result of Defendant's actions described herein, Plaintiff has suffered emotional distress, humiliation, and loss of future earning capacity. These damages are continuing. Plaintiff is entitled to recover payment for these compensatory damages under 29 U.S.C. § 216(b) in an amount to be determined by the jury.

100. Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights when on or about November 28, 2016 Defendants fired Plaintiff for complaining about his rate of pay. Plaintiff is therefore each entitled to receive punitive damages under 29 U.S.C. § 216(b) for that violation in an amount to be determined by the jury.

101. Plaintiff is entitled to recovery of reasonable attorney's fees and costs incurred in the prosecution of this action pursuant to 29 U.S.C. § 216(b). Plaintiff is also entitled to his prejudgment and post-judgment interest on all awards.

**THIRD CLAIM FOR RELIEF**
**(Oregon Wage and Hour Law Violations)**

102. Plaintiffs re-allege and incorporate herein by reference, all allegations contained in paragraphs 1 through 77 above.

103. Defendant violated ORS 652.150 when it failed to pay Plaintiff all wages due on termination of employment.

104. As a result of Defendant's failure to pay Plaintiff's wages, Plaintiff's earnings were taxed at a higher rate, and Plaintiff was deprived of employer contributions to his individual social security account.

105. Plaintiff has been damaged by Defendant's violation of Oregon Wage and Hour Laws and is entitled to his actual damages, penalty wages pursuant to ORS 652.150, plus pre-judgment interest, in amounts to be determined by the jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully ask the Court to grant the following relief:

1. On the First Claim for Relief, award Plaintiff his actual damages for unpaid minimum wages and overtime in an amount to be determined at trial, plus an equal amount as liquidated damages for failure to pay minimum wages and overtime pursuant to the FLSA; or in the alternative an Oregon Wage penalty computed pursuant to ORS 652.150, whichever is greater.

2. On the Second Claim for Relief, award Plaintiff reinstatement, or front pay, backpay, compensatory and punitive damages, in amounts to be determined by the jury.

3. On the Third Claim for Relief, award Plaintiff his actual damages for violations of Oregon Wage and Hour Laws, penalty wages calculated according to ORS 652.150, in amounts to be determined by the jury.

4. Award Plaintiff his reasonable attorney fees and costs;

5. Award Plaintiff his pre-judgment and post-judgment interest; and

6. Award Plaintiff any and all such other legal and equitable relief as this Court deems just and proper.

**DATED the 14th day of March, 2017.**

Respectfully submitted,

__/s Drew G. Johnson_____
Drew G. Johnson
E-mail: drew@leimanlaw.com
Oregon State Bar No.: 114289
44 W. Broadway, Suite 326
Eugene, OR 97401
Telephone: (541) 345-2376
Facsimile: (541) 345-2377
Of Attorneys for Plaintiff

__/s Alan J. Leiman_____
Alan J. Leiman
E-mail: alan@leimanlaw.com
Oregon State Bar No.: 98074
44 W. Broadway, Suite 326
Eugene, OR 97401
Telephone: (541) 345-2376
Facsimile: (541) 345-2377
Of Attorneys for Plaintiff